Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LLOYD LEVY, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | CLASS ACTION COMPLAINT FOR: <br> (1)  Violation of § 14(a) of the Securities Exchange Act of 1934 <br> (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 <br> (3)   Breach of Fiduciary Duties |
| STEIN MART, INC., JAY STEIN, D. HUNT HAWKINS, MARYANN MORIN, IRWIN COHEN, THOMAS L. COLE, TIMOTHY COST, LISA GALANTI, RICHARD L. SISISKY, BURTON M. TANSKY, | |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff Lloyd Levy ("Plaintiff"), by his attorneys, on behalf of himself and those similarly

situated, files this action against the defendants and alleges upon information and belief, except

for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder class action on behalf of himself and all other

public stockholders of Stein Mart, Inc. ("Stein Mart" or the "Company") against Stein Mart and

Stein Mart's Board of Directors (the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to Stratosphere Holdco, LLC, through its wholly-owned subsidiary Stratosphere Merger Sub, Inc. ("Merger Sub," and with Stratosphere Holdco, LLC, "Kingswood") as a result of an unfair process for an unfair price. Plaintiff challenges and seeks to enjoin an upcoming stockholder vote on a proposed transaction by which Kingswood will acquire each issued and outstanding share of Stein Mart for inadequate and insufficient consideration (the "Proposed Transaction" or "Merger"). Kingswood will acquire all of the stock not already owned by affiliates of Defendant Stein, Stein Mart's former chief executive and current chairman of its board. Both companies' boards of directors have approved the deal.

2.      Pursuant to the terms of the definitive Agreement and Plan of Merger entered into by and among Stein Mart and Kingswood on January 30, 2020 (the "Merger Agreement"), Kingswood will acquire all of the outstanding shares of Stein Mart common stock, in compensation for which Stein Mart stockholders will be entitled to receive only $0.90 per share in cash.

3.      Thereafter, on March 2, 2020, Stein Mart filed a Preliminary Proxy Statement on Schedule 14A (the "Preliminary Proxy") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Stein Mart has recently invested in new technology and strategies to likely propel growth in its sales and profits in the near future. Along with its investments, Stein Mart has been a successful enterprise for over 100 years and has continued to perform as a successful player in the industry for the majority of its history.

5.    Moreover, and significantly, the Preliminary Proxy describes an insufficient "sales process" which was hijacked by Defendant Jay Stein, company founder, Chairman of the Board of Directors, and owner of approximately 35.5% of the outstanding common stock of the Company.  Defendant Stein has used his influence over the Company, the Board, and the process to secure for himself different and better treatment – namely – rather than being cashed out of the Company at the paltry sum of $0.90 per share, all of Defendant's Stein's stock in the Company will roll over into equity in the Parent entity, allowing his interest in the Company to continue to grow.

6.    In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Stein Mart without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Kingswood without regard for Stein Mart public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Stein Mart stockholders.

7.    In addition to Kingswood's interest in the Proposed Transaction, the deal may also be tainted by conflicts of interest of the directors and Company executives.  Notably, certain of the Company's directors and senior executive officers may have been motivated to enter into the Proposed Transaction in order to receive benefits not shared equally with Plaintiff and members of the Class (defined below).  Under the terms of the Merger Agreement, all illiquid Company options and other incentive awards will vest no later than seven days before the effective date of the Proposed Transaction.

8.    If the Proposed Transaction is approved, the Individual Defendants will have breached their fiduciary duties of loyalty and due care by, *inter alia*, agreeing to sell Stein Mart without first taking steps to ensure that Plaintiff and Class members (defined below), who are the minority stockholders of the Company, would obtain adequate and fair consideration under the circumstances.

9.    In violation of Sections 14(a) and 20(a) of the Exchange Act, and further violation of their fiduciary duties, defendants caused to be filed the materially deficient Preliminary Proxy on March 2, 2020 with SEC in an effort to solicit stockholders to vote their Stein Mart shares in favor of the Proposed Transaction.  The Preliminary Proxy is materially deficient, deprives Stein Mart stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of defendants' fiduciary duties.    As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process and certain conflicts of interest for management; (b) the financial projections for Stein Mart, provided by Stein Mart to the Company's financial advisor PJ Solomon Securities, LLC ("PJ Solomon") for use in its financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinion provided by the Company's financial advisor, PJ Solomon.

10.    Absent judicial intervention, the Merger will be consummated, resulting in irreparable injury to Plaintiff and the Class.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Stein Mart's stockholders, and to recover damages resulting from violations of federal securities laws by Defendants.

11.    Plaintiff alleges that he, along with all other public stockholders of Stein Mart common stock, are entitled to enjoin the Proposed Transaction or, alternatively, to recover damages in the event that the Proposed Transaction is consummated.

## THE PARTIES

12.    Plaintiff Lloyd Levy is and has been a stockholder of Stein Mart during all relevant times hereto.

13.    Defendant Stein Mart is a Florida corporation that maintains its principal place of business at 1200 Riverplace Blvd., Jacksonville, Florida 32207. Stein Market is a specialty off-price retailer, offers designer and name-brand fashion apparels, home décor merchandise, accessories, and shoes at everyday discount prices in the Unites States. The Company was incorporated in 1992 and trades on the NYSE under the symbol "SMRT."

10.    Defendant Jay Stein ("Stein") has served on the Board of Company at all relevant times. Stein also has served as the Chairman of the Board since January 1989.  According to the Proxy, as of November 2, 2019, Stein owned and controlled 35.5% of the outstanding common stock of the Company.  These Company shares owned by Stein, unlike all others, will not be cashed out upon consummation of the Proposed Transaction, but will rather be rolled over in exchange for equity in the Parent entity.  Additionally, Stein has entered into a voting and support agreement in which he has agreed to vote all of his shares of stock in favor of the Proposed Transaction.

11.    Defendant D. Hunt Hawkins ("Hawkins") has been a Director of the Company at all relevant times. Hawkins also serves as the Chief Executive Officer of Company.

12.    Defendant MaryAnn Morin ("Morin") has been a Director of the Company at all relevant times. Morin also serves as the President of Company.

13.    Defendant Irwin Cohen ("Cohen") has been a Director of the Company at all relevant times. Cohen also serves as a Member of the Audit and Corporate Governance Committees.

14.    Defendant Thomas L. Cole ("Cole") has been a Director of the Company at all relevant times. Cole also serves as a Member of the Audit Committee.

15.    Defendant Timothy Cost ("Cost") has been a Director of the Company at all relevant times. Cost also serves as a Member of the Compensation Committee.

16.    Defendant Lisa Galanti ("Galanti") has been a Director of the Company at all relevant times. Galanti also serves as a Member of the Compensation Committee.

17.    Defendant Richard L. Sisisky ("Sisisky") has been a Director of the Company at all relevant times. Sisisky also serves as a Member of the Compensation and Corporate Governance Committees.

18.    Defendant Burton M. Tansky ("Tansky") has been a Director of the Company at all relevant times. Tansky also serves as a Member of the Audit, Compensation, and Corporate Governance Committees.

19.    The Individual Defendants in paragraphs 10-18 are, and at all times relevant hereto have been, directors of Stein Mart.

20.    The Individual Defendants owe fiduciary duties including good faith, loyalty, due care and candor to Stein Mart's stockholders.

21.    The Individual Defendants, by reason of their corporate directorships and/or executive positions, are fiduciaries to and for the Company's stockholders, which fiduciary relationship required them to exercise their best judgment, and to act in a prudent manner and in the best interests of the Company's stockholders.

22.     Each Individual Defendant herein is sued individually, as a conspirator and aider and abettor, as well as in their capacity as an officer and/or director of the Company, and the liability of each arises from the fact that they have engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

23.     Non-Defendant Kingswood Capital Management, LLC is a private investment firm primarily focused on businesses that are undergoing varying degrees of operational, financial or market-driven change. Its executive office is located at 11777 San Vicente Blvd Suite 650 Los Angeles, CA 90049.

24.     Non-Defendant Stratosphere Holdco, LLC is a Delaware limited liability company and a wholly-owned subsidiary of Kingswood.

25.     Non-Defendant Merger Sub is a Florida corporation and a wholly-owned subsidiary of Kingswood.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

27.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Stein Mart common stock who are being and will be harmed by Defendants' actions described herein (the "Class"). The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

30.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable. Stein Mart's stock is publicly traded on the Nasdaq and, as of December 4, 2019, there were more than 48 million such shares outstanding. The actual number of public stockholders of Stein Mart can be ascertained through discovery;

b.      There are questions of law and fact which are common to the Class, including *inter alia*, the following;

i.      Whether Defendants have violated the federal securities laws;

ii.     Whether Defendants made material misrepresentations and/or omitted material facts in the Proxy; and

iii.    Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated;

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

31.  By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Stein Mart's stockholders and owe the stockholders the duties of due care, loyalty, and good faith.

32.  By virtue of their positions as directors and/or officers of Stein Mart, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Stein Mart to engage in the practices complained of herein.

33.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company's stockholders.  To diligently comply with these duties, directors of a corporation must:

      a.     act with the requisite diligence and due care that is reasonable under the circumstances;

      b.     act in the best interest of the Company's stockholders;

      c.     use reasonable means to obtain material information relating to a given action or decision;

      d.     refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

      e.     avoid competing against the Company or exploiting any business opportunities of the Company for their own benefit, or the benefit of others; and

      f.     disclose to the Company's stockholders all information and documents relating to the Company's affairs that they received by virtue of their positions in the Company.

34.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Stein Mart, are obligated to refrain from:

      a.     participating in any transaction where the directors' or officers' loyalties are divided;

b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company's public stockholders; and/or

c.    unjustly enriching themselves at the expense or to the detriment of the stockholders.

35.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff and the other public stockholders of Stein Mart, including their duties of loyalty, good faith, and due care.

36.    As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Stein Mart common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Stein Mart Background*

37.    Stein Mart is a specialty off-price retailer, offers designer and name-brand fashion apparels, home décor merchandise, accessories, and shoes at everyday discount prices in the Unites States. The company's stores also provide merchandise locator services; a preferred customer program; co-branded and private label credit card programs; and electronic gift cards.

38.    Stein Mart was founded in 1908 and is headquartered in Jacksonville, Florida. As of November 20, 2019, the Company operated 283 stores in 30 states and an e-commerce retail selling site.

39.    Stein Mart has shown solid financial improvement.  For example, in its financial report for the 3Q 2019, the Company reported an improvement in comparable sales from the first

half of the year 2019, in addition to Gross Profit Percentage slightly increasing from 2018's rate of 25%.

40.     Speaking on these positive results, Company CEO Defendant Hawkins, mentioned the Company's strategies and achievements, stating, "Our third quarter sales trends improved significantly from the first half of the year. The increase reflects traction from our fall initiatives with the most impactful beings the launch of our Kids department and a double-digit increase in omni sales. With the launch of Kids in August, now Stein Mart is once again a one-stop destination for the entire family. It's great to have kids back in our stores and to see our customers response to the assortment. We're pleased with early sales results and expect this business to continue to grow throughout the fourth quarter with an enhanced offering for the holiday selling season."

41.     Stein Mart has continuously been on top of new innovations, like their most recent partnership with Inference Solutions announced on January 13, 2020 in Mar Tech Series. The Company teamed up with Inference Solutions to bring a platform to enable its Buy Online, Pickup In Store experience to all Stein Mart stores. The article notes that Company expects about 15 percent of its online order to shift to in-store pickup. Being cutting edge in the industry is extremely beneficial to the customer experience today, and in the article, the author comments on Company's ability to leveraging the system into other areas of its stores. This investment in shopping experience has the ability to add to Stein Mart's proven success over the years and have a large financial impact going forward.

42.     Despite this positive outlook and respect amongst the industry, the Proposed Transaction, and the valuation contained therein do not account for Stein Mart's proven financial success.  If consummated, the Proposed Transaction would deprive Plaintiff and other members of the Class the true value of their investments.

*The Flawed Sales Process*

43.    As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants – namely Defendant Stein's individual self-interest – and was designed with only one concern in mind – to effectuate a sale of the Company to Kingswood.

44.    Of primary concern is the several ways in which Defendant Stein has inserted himself into and controlled the sales process through its existence.  Despite the Preliminary Proxy revealing that in May of 2018 the special committee of the Board organized to facilitate this process (the "Special Committee") made a determination to effectively "wall off" Defendant Stein from any participation in the sales process in order to comply with the Board's fiduciary duties, Defendant Stein inserted himself in the sales process nonetheless.

45.    Specifically, in March 2019, Defendant Stein informed the Board that he had personally hired Moelis & Company ('Moelis") to be a financial advisor to himself and to reach out to do a market check for potentially interested counter-parties regarding strategic alternatives with the Company wherein Defendant Stein would rollover his interest in the Company rather than be cashed out.

46.    Incredulously, the Special Committee agreed to such an arrangement, wherein Moelis and PJ Solomon were operating independently from one another engaging in separate and parallel market checks.

47.    Eventually the Special Committee itself was eroded away. Initially, with the inclusion of an additionally member, Defendant Tim Cost, on September 20, 2019 for the purported reason that he had experience with serving as a chair of a special committee in a similar transaction, despite the fact that given that experience he could have been included in the Special

Committee from it outset.  And later, when, on January 27, 2020 at a meeting of the full Board, the Special Committee desired to learn the views and recommendations of Directors not on the committee, in order to make their recommendation regarding the Proposed Transaction to the full Board itself.

48.     The most damning evidence of Stein's interference in the sales process is revealed by the Preliminary Proxy, which stated that as of March 2019 it was the position of the Special Committee that any transaction involving Stein being treated differently than other Company stockholders, for example by rolling over his equity in the Company, that a majority-of-the-minority provision should be included in any such transaction.  However, ***despite this exact scenario playing out at the end of the sales process no majority-of-the-minority provision is present in the terms of the merger agreement underlying the Proposed Transaction.***  As a consequence of this, and Defendant Stein's entry into a voting and support agreement, the Proposed Transaction will require less than 15% of minority stockholder approval in order to be consummated.

49.     Additionally, the Preliminary Proxy is also unclear as to the nature of any specific standstill restrictions arising out of the terms of any of the numerous non-disclosure agreements entered into between Stein Mart on the one hand and any interested third party, including Kingswood, on the other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in any such agreements, and if so, the specific conditions, if any, under which such provisions would fall away.

50.     Moreover, the Preliminary Proxy is also unclear as to any differences that may exist between the various non-disclosure agreements entered into between Stein Mart and any interested third parties.

51.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

**The Proposed Transaction**

52.     On January 31, 2020, Stein Mart announced the Proposed Transaction.  The press release states in relevant part as follows:

> **JACKSONVILLE, Fla., Jan. 31, 2020 (GLOBE NEWSWIRE) --** Stein Mart, Inc. (NASDAQ: SMRT) ("Stein Mart" or the "Company") today announced it has entered into a definitive merger agreement under which an affiliate of Kingswood Capital Management, L.P. ("Kingswood") will acquire all of the outstanding common stock of Stein Mart not already beneficially owned by affiliates of Jay Stein, Stein Mart's former CEO and current Chairman of the Board of Directors, and related investors for $0.90 per share in cash. Upon closing, Stein Mart will become a privately held company and Stein Mart common stock will no longer be listed or traded on any public stock market.
>
> The purchase price represents a premium of approximately 38% to Stein Mart's closing stock price on January 30, 2020, the last trading day prior to this announcement.
>
> The transaction was unanimously approved by the Stein Mart Board of Directors (other than Mr. Stein), acting on the unanimous recommendation of a Special Committee of independent directors that was granted full authority to conduct a comprehensive strategic review and evaluate, and if warranted, negotiate an acquisition proposal.
>
> "The Special Committee and its advisors conducted a thorough and independent process to review the Company's strategic alternatives and identify a transaction that would maximize shareholder value. We believe that this transaction is in the best interest of all Stein Mart stakeholders, including our many loyal employees," said Richard L. Sisisky, Stein Mart Board member and Chairman of the Special Committee.
>
> The transaction will be financed by debt provided by Wells Fargo Bank, National Association and Pathlight Capital LP and by equity provided by affiliates of Kingswood.  As part of the transaction, an entity managed by Jay Stein will contribute its equity and, following the closing of the merger, will indirectly own one-third of Stein Mart after the closing.
>
> The transaction, which is expected to close in the first half of calendar year 2020, is subject to approval by Stein Mart shareholders and the satisfaction of other

customary closing conditions. The Stein Mart Board of Directors recommends that Stein Mart's shareholders vote to adopt and approve the merger agreement.

Stein Mart will file a Current Report on Form 8-K with the Securities and Exchange Commission (SEC), which will more fully describe the terms and conditions of the merger agreement and the proposed transaction.

### The Inadequate Merger Consideration

53.     The Company's industry presence and potential for future growth establish the inadequacy of the merger consideration.

54.     Pursuant to the terms of the Merger Agreement, the Proposed Transaction values shares of Stein Mart at $0.90 in cash.  Significantly, the 52-Week high for Stein Mart stock was $1.48, more than 60% higher than the valuation made by Kingswood in the Proposed Transaction.

55.     Stein Mart has year after year reported over $330 million in Gross Profit, continuing in Company's Income Statement for 2019, reporting over $337 million. In addition, according to its 2019 end of year Balance Sheet, Stein Mart has over $437 million of Total Assets, which should have been accounted for in Kingswood's purchase price in Proposed Transaction. Stein Mart's recent financial data indicates their consistency, financial stability, and capacity to run a successful business which they have done for over 100 years.

56.     A financial website MBA Skool, analyzed Stein Mart's strengths as a company, coming up with 7 strengths that are crucial to a business in the retail industry: "1. Stein Mart has more than 100 years of existence 2. Stein Mart has operations of 250+ stores across majority of US states 3. Stein Mart stores carry recent trends in clothing for both men and women. Additionally, home décor, accessories, and shoes are all available at discounted prices. 4. High brand visibility in the geography of existence 5. Strong distribution and supply chain network. Offering fast and convenient international shipping. 6. Volume led discount opportunities. All are at prices up to 60% below department store prices, every day. 7. Because the customer appreciates

variety – and likes to be unique – Stein Mart updates merchandise frequently and supply a limited inventory of each item per store." Each strength of Company's are the underlying factors of what has made Stein Mart the successful company it is today.

57.    Stein Mart's recent investments in cutting edge technology, many coming in 2019, are implication of future growth of Company. Some of the partnerships include Oracle's Cloud for streamlines approach to merchandise, Inference Solutions for online ordering systems, and Amazon for their locker service in its stores. With a change in approach, Stein Mart can increase sales and generate the type of success the Company is known for doing.

58.    Speaking on the recent partnerships, Company leadership spoke with optimism. Company SVP of Planning and Allocation said about the Oracle partnership, "The enhanced functionality of Oracle's Merchandise Financial Planning solution will help us analyze data faster to create better plans up front so we can buy smarter and manage inventory more effectively." Company CEO and Defendant Hawkins said about the partnerships overall, "We are pleased with the progress we've made with our initiatives during the third quarter, and look forward to the positive impact that they will have as they take greater hold in the fourth quarter and beyond." As well as, "we are thrilled to offer this innovative delivery experience to Amazon customers while introducing new shoppers to Stein Mart…Customer service and convenience are top priorities at Stein Mart, and the ability to give both to Amazon customers was a big factor in our decision to introduce this program."

59.    Stein Mart has been trending in the right direction with its sales, profits, and initiatives, and it is safe to assume that the Company will to continue its upward progression going forward.

60.     Accordingly, the Proposed Transaction will allow Kingswood to purchase Stein Mart at an unfairly low price while availing itself of Stein Mart's significant value and upside or long-term potential.

***Potential Conflicts of Interest***

61.     The substantial interests of the Individual Defendants and other Company insiders themselves cannot be ignored.  First and foremost, as stated above, Defendant Stein's interest in the Company will be treated differently than all others, allowing him to roll over his more than 35.5% stake in Stein Mart into the Parent entity and continue to grow his investment while Plaintiff and all other Company stockholders are cashed out at the low value of $0.90 per share.

62.     Additionally, other Company insiders, including the Individual Defendants, who currently own large, illiquid portions of Company stock that will be exchanged for significant amounts of money upon the consummation of the Proposed Transaction as follows:

| Name | Shares of Common Stock (#) | | Value ($) |
|---|---|---|---|
| **Directors** | | | |
| Jay Stein[1] | 17,339,544[(1)] | $ | 15,605,590 |
| Irwin Cohen | 53,696 | | 48,326 |
| Thomas L. Cole | 13,706 | | 12,335 |
| Timothy Cost | 13,706 | | 12,335 |
| Lisa Galanti | 13,706 | | 12,335 |
| Richard L. Sisisky | 138,905 | | 125,015 |
| Burton M. Tansky | 22,593 | | 20,334 |
| | | | |
| **Executive Officers** | | | |
| D. Hunt Hawkins* | 347,946 | | 313,151 |
| MaryAnne Morin* | 86,658 | | 77,992 |
| James B. Brown | 33,333 | | 30,000 |

63.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to

---

[1] As per the terms of the Merger Agreement, Defendant Stein's 17,339,544 shares will be rolled over into equity in Parent.

receive certain consideration according to the merger agreement, and will be paid out to the Company insiders as follows:

| Name | Stock Options (#) | Value ($) | Time Vesting Restricted Stock/Units (#)(1) | Value ($) |
|---|---|---|---|---|
| **Directors** | | | | |
| Jay Stein | — | $ — | — | $ — |
| Irwin Cohen | — | — | 7,112 | 6,401 |
| Thomas L. Cole | 4,000 | — | 7,112 | 6,401 |
| Timothy Cost | 4,000 | — | 7,112 | 6,401 |
| Lisa Galanti | 4,000 | — | 7,112 | 6,401 |
| Richard L. Sisisky | — | — | 7,112 | 6,401 |
| Burton M. Tansky | 5,748 | — | 7,112 | 6,401 |
| **Executive Officers** | | | | |
| D. Hunt Hawkins* | 801,631 | — | 133,334 | 120,001 |
| MaryAnne Morin* | 500,000 | — | 116,667 | 105,000 |
| James B. Brown | — | — | 66,667 | 60,000 |

64.     Based on the above, the Proposed Transaction is the product of an unfair and inadequate sales process conducted by the Board and Company insiders with an eye to personal compensation and in breach of its fiduciary duties and which fails to maximizer stockholder value.

***Preclusive Deal Mechanisms***

65.     The Merger Agreement contains certain provisions that unfairly favor Kingswood by making an alternative transaction either prohibitively expensive or otherwise impossible.  For example, the Merger Agreement contains a termination fee provision that requires Stein Mart to pay up to $2,229,000.00 to Kingswood if the Merger Agreement is terminated under certain circumstances.  Under one such circumstance, Stein Mart must pay the termination fee to Kingswood should it enter into any acquisition proposal up to *twelve (12) months* after the Proposed Transaction is terminated.

66.     The termination fee payable under this provision will make the Company that much more expensive to acquire for potential purchasers, while resulting in a corresponding decline in the amount of consideration payable to Stein Mart stockholders.

67.     Additionally, the Merger Agreement also contains a "No Solicitation" provision that restricts Stein Mart from considering alternative acquisition proposals by, *inter alia*, constraining Stein Mart's ability to solicit or communicate with potential acquirers.

68.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Defendants agreed to provide the Stein Mart information in order to match any other offer, thus providing the Kingswood access to the unsolicited bidder's financial information and giving the Kingswood the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the Kingswood.

69.     Finally, as stated above, Defendant Stein has signed a voting and support agreement, agreeing to vote his 35.5% interest in the Company in favor of the Proposed Transaction, making its consummation all but certain.

70.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction, and the Proposed Transaction is the product of the Board's breaches of fiduciary duty.

**The Materially Misleading and/or Incomplete Preliminary Proxy**

71.     On March 2, 2020, the Stein Mart Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy that, in violation of federal securities laws and their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading Up to the Proposed Transaction*

72.    Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy fails to disclose:

a.    The nature of any specific standstill restrictions arising out of the terms of any of the non-disclosure agreements entered into between Stein Mart on the one hand and any interested third party, including Kingswood, on the other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in any such agreements, and if so, the specific conditions, if any, under which such provisions would fall away;

b.    The nature of any differences that exist between the various non-disclosure agreements entered into between Stein Mart and any interested third parties;

c.    The specific reasoning as to why no majority-of-the-minority provision was included in the executed Merger Agreement underlying the Proposed Transaction, given the Special Committees initial stance on any transaction involving a rollover of Defendant Stein's stock.

d.    The specific reasoning as to why Defendant Stein and his financial advisor Moelis were allowed to conduct a market check for potentially interested third parties for a strategic transaction with Stein Mart;

e.    The specific reasoning as to why the Special Committee added Defendant Cost so late in the sales process given that the reasoning for his inclusion was his prior experiences with such transactions;

*Omissions and/or Material Misrepresentations Concerning Stein Mart's Financial*
*Projections*

73.    The Preliminary Proxy fails to provide material information concerning financial projections provided by Stein Mart's management and relied upon by PJ Solomon in its analyses. The Preliminary Proxy indicates that in connection with the rendering of its fairness opinion, PJ Solomon reviewed "certain financial projections for the Company prepared and provided to PJS by the management of the Company and approved for PJS's use by the Special Committee (the "Projections")" Accordingly, the Preliminary Proxy should have, but fails to, provide certain information in the projections that Stein Mart management provided to PJ Solomon.  Courts have uniformly stated that "projections . . . are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-03 (Del. Ch. 2007).

74.    With respect to all sets of projections, the Preliminary Proxy fails to disclose all line items used to calculate (a) Adjusted EBITDA, (b) cashflows from operating activities, and (c) unlevered free cash flow.

75.    The Preliminary Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

76. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

77.    Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of Stein Mart are unable to properly evaluate the Company's true worth or the accuracy of PJ Solomon's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.   As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by PJ Solomon*

78.    In the Preliminary Proxy, PJ Solomon describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

79.    With respect to the *Selected Companies Analysis*, the Preliminary Proxy fails to disclose the following:

a.   Why only seven companies were chosen to compare; and

b.   The specific benchmark multiples for each comparable company.

80.    With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

a.   The total value of each selected transaction;

b.   The specific date on which each selected transaction closed; and

c.   The specific benchmark multiples for each transaction.

81.    With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

a.  The specific inputs and assumptions used to calculate the discount rate range of 9.5% - 11.5% as well as the Company's weighted average cost of capital;

b.  The specific inputs and assumptions used to calculate the illustrative range of exit terminal year adjusted EBITDA multiples of 3.5x -6.0x;

c.  The Company's Net Debt;

d.  The fully-diluted shares of the Company as of January 27, 2020;

e.  The terminal values derived; and

f.  The specific inputs and assumptions used to calculate the perpetuity growth rate range of 0.0% - 2.0%.

82.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

83.    Without the omitted information identified above, Stein Mart's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Stein Mart's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

**FIRST COUNT**

**Breach of Fiduciary Duty**
**Against the Individual Defendants**

84.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

24

85.    As alleged herein, Defendants have initiated a process to sell Stein Mart in a transaction that undervalues the Company.  The Individual Defendants are privy to non-public information concerning the Company that the public stock stockholders are not; thus, there exists a fiduciary duty to protect these stockholders.  Defendants have failed to sufficiently inform themselves of Stein Mart's value, or have disregarded the true value of the Company.  Furthermore, the Individual Defendants have agreed to onerous deal protection devices that discourage any alternate acquirer from coming forward in the face of the knowledge that Kingswood can block the purchase.

86.    As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to Plaintiff and the other members of the Class, and will further a process that inhibits the maximization of stockholder value and the disclosure of material information.

87.    Plaintiff and the members of the Class have no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(a) of the Exchange Act
### Against All Defendants

88.    Plaintiff repeats all previous allegations as if set forth in full herein.

89.    Defendants have disseminated the Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

90.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the

use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

91.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

92.    The Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

93.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

94.    The Individual Defendants were at least negligent in filing a Proxy that was materially misleading and/or omitted material facts necessary to make the Proxy not misleading.

95.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to decide whether to vote their shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act
### Against The Individual Defendants

96.     Plaintiff repeats all previous allegations as if set forth in full herein.

97.     The Individual Defendants were privy to non-public information concerning the

Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and

Board meetings and committees thereof and via reports and other information provided to them in

connection therewith.  Because of their possession of such information, the Individual Defendants

knew or should have known that the Proxy was materially misleading to Company stockholders.

98.     The Individual Defendants were involved in drafting, producing, reviewing and/or

disseminating the materially false and misleading statements complained of herein.  The Individual

Defendants were aware or should have been aware that materially false and misleading statements

were being issued by the Company in the Proxy and nevertheless approved, ratified and/or failed

to correct those statements, in violation of federal securities laws.  The Individual Defendants were

able to, and did, control the contents of the Proxy.  The Individual Defendants were provided with

copies of, reviewed and approved, and/or signed the Proxy before its issuance and had the ability

or opportunity to prevent its issuance or to cause it to be corrected.

99.     The Individual Defendants also were able to, and did, directly or indirectly, control

the conduct of Stein Mart's business, the information contained in its filings with the SEC, and its

public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that

the misrepresentations specified herein had not been properly disclosed to and were being

concealed from the Company's stockholders and that the Proxy was misleading.  As a result, the

27

Individual Defendants are responsible for the accuracy of the Proxy and are therefore responsible and liable for the misrepresentations contained herein.

100.    The Individual Defendants acted as controlling persons of Stein Mart within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Stein Mart to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Stein Mart and all of its employees.  As alleged above, Stein Mart is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A.    Declaring that this action is properly maintainable as a class action, certifying Plaintiff as Class representative and certifying his counsel as Class counsel;

B.    Preliminarily and permanently enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction on the terms presently contemplated;

C.    To the extent the Proposed Transaction is consummated before entry of this Court's judgment, rescinding it and setting it aside or awarding rescissory damages;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses; and

E.    Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 10, 2020                    **BRODSKY & SMITH, LLC**

Evan J. Smith
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*